# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:14-cv-619-FDW

| | |
|---|---|
| QUINCY TEEYON KETTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DAVID AARON, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants David Aaron, Nicholas Keegan, Jessica Martin, FNU McLaughlin, FNU Parker, Joshua Russell, and Terry Williamson, (Doc. No. 51), on Defendants' Motion for Protective Order, (Doc. No. 56), and on Plaintiff's Pro Se Motion to Appoint Counsel, (Doc. No. 59).

### I.    BACKGROUND

#### A.    Procedural Background

Pro se Plaintiff Quincy Teeyon Ketter, a North Carolina inmate incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, filed this action on November 4, 2014, pursuant to 42 U.S.C. § 1983. In the Complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff alleged that he was subjected to excessive force and deliberate indifference to serious medical needs at Lanesboro in June 2014. Plaintiff has named as Defendants: FNU Parker, identified as a Sergeant at Lanesboro; David Aaron, identified as the Unit Manager at Lanesboro; FNU McLaughlin, identified as a Sergeant at Lanesboro; and Nicholas Keegan, Jessica Martin, Joshua Russell, and Terry Williamson, all members of Lanesboro's Prison Emergency Response Team

("PERT").

On May 23, 2016, Defendants filed the pending summary judgment motion. (Doc. No. 51). On May 26, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. No. 55). Plaintiff filed a belated response to the summary judgment motion in the form of his own sworn affidavit, sworn declarations from other inmates, and various records attached as exhibits. (Doc. No. 60).

### B. Factual Background

#### 1. Plaintiff's Allegations

**a. Plaintiff's Allegations Related to His Refusal to Give up his Wheelchair Beginning on around June 12, 2014**

According to Plaintiff's verified Complaint, on June 12, 2014, prison staff told him that Defendant McLaughlin had placed him on cell restriction because he would not give up a wheelchair he had been "assigned to" on February 26, 2014, after he had surgery on his left foot. (Id. at 4). Another officer brought Plaintiff a disciplinary notice on June 14, 2014, indicating that Plaintiff had refused a direct order from McLaughlin to give up the wheelchair. (Id.). Plaintiff wrote statements indicating that he could not walk without the wheelchair. (Id.).

Plaintiff alleges that it is cruel and unusual punishment for him to have to "hop" to his wicket door to receive and return his food tray each day. (Id.). McLaughlin responded to Plaintiff that "she don't care and that she wants her wheelchair." (Id.). McLaughlin reportedly informed Plaintiff that another inmate was found with a knife made from a wheelchair part and that all the wheelchairs from the unit were being removed. (Id. at 5). Plaintiff alleges that he asked for crutches from McLaughlin and that she would not give him any. (Id.). According to Plaintiff, he needs a wheelchair to get to and from recreation and to and from other appointments

outside of his cell. (Id.). Plaintiff alleges that on June 14, 2014, McLaughlin escorted Plaintiff to a medical appointment in his wheelchair. Plaintiff speculates that McLaughlin did not remove the wheelchair at that time because "she knew the doctor would not have allowed her to take the wheelchair[.]" (Id. at 6).

b. **Plaintiff's Allegations as to the Excessive Use of Force Incident on June 17, 2014, when PERT Team Members Came to Plaintiff's Cell to Take His Wheelchair Away From Him**

Plaintiff alleges that on June 17, 2014, Defendants Keegan, Martin, Williamson, and Russell (referred to collectively as "the PERT Team") entered his cell and jumped on him before he could get to his cell door. (Id.). Plaintiff alleges that the team members jumped on, kicked, stomped, and punched him, and used racial slurs against him. (Id.). Plaintiff alleges that after they took him out of the cell and put him in the holding cell, they jumped on him again. (Id.). Plaintiff alleges that the team members put him in full restraints with his hands behind his back when they are supposed to be in the front. (Id. at 7). (Id.). Plaintiff alleges that he was written up for the incident but that he did not refuse any order. (Id. at 8). Plaintiff alleges that Defendant Parker came to take pictures of him after the incident but that Parker refused to photograph Plaintiff's bruises. (Id. at 10). Plaintiff alleges that McLaughlin and Aaron would not allow him to use the wheelchair even though he needed it and that they oversaw the PERT Team members who used excessive force on him. (Id. at 10-12). Plaintiff alleges that his back and sides hurt and that he has to hop to his door. (Id. at 13).

2. **Defendants' Summary Judgment Materials**

In support of the summary judgment motion, Defendants rely on all pleadings and attachments and the affidavit of Defendant David Aaron, with exhibits. (Doc. No. 53: Aaron

3

Aff., Exs. A-F). Aaron's affidavit indicates that he has been employed by the North Carolina Department of Public Safety ("NCDPS") since 2006 and is presently employed as a Correctional Captain. (Id. at ¶ 2). Aaron is knowledgeable of the policies and procedures with the use of force, regularly conducts investigations related to the use of force, and has reviewed the use of force incident report in this case. (Id. at ¶¶ 5-8, 27-30). Aaron states that there is no surveillance footage due to the delayed reporting of the incident. (Id. at ¶ 9). Aaron has provided copies of two incident reports related to the use of force. (Id., Exs. B & C).

As Aaron explains in his affidavit, and as the record confirms, prison officials did not being investigating the June 17, 2014, incident until July 10, 2014, which was 23 days after the incident, because the incident was not initially reported. See (Id. at ¶ 10). The investigation began on July 10, 2014, because that was the date Aaron received Plaintiff's grievance form alleging excessive force. (Id.). Aaron began the investigation by attempting to view the surveillance video, but it had been automatically deleted by the surveillance system due to the lapse in time. (Id. at ¶ 12). Aaron next had Plaintiff evaluated by medical staff and photographed. (Id. at ¶¶ 13-14). Medical staff advised that Plaintiff was able to stand without problem, had normal vital signs, and stated that he had no injuries and did not hurt. (Id.).

According to Aaron's affidavit, the witness statements show that, on June 17, 2014, members of the PERT Team were instructed to enter Plaintiff's cell and retrieve a wheelchair that Plaintiff was refusing to turn over. (Id. at ¶ 15). The team members' witness statements indicated that they did so without incident and that Plaintiff was held in a holding cage during the incident. (Id.). Aaron asserts that Plaintiff refused to complete a witness statement during

4

the investigation.[1] (Id. at ¶ 16). Aaron concluded that Plaintiff's allegations in his grievance were not supported by the investigation. (Id. at ¶ 17).

Following Aaron's investigation, the facility's officer in charge ("OIC") was notified of Plaintiff's allegations and directed that a second investigation be completed by Captain Martin. (Id. at ¶ 18; Ex. C). Martin collected a second set of statements, which indicated that on June 14, 2014, Plaintiff had been restrained with plastic restraints before he exited his cell and was placed in the holding cell with those restraints. (Id. at ¶ 19). Members of the PERT Team removed Plaintiff from the holding cell to remove the plastic restraints and to apply full restraints to him, per policy. (Id.). As Defendant Keegan attempted to place Plaintiff in full restraints in the hallway beside the holding cell, Plaintiff became combative with members of the PERT Team and attempted to turn around to face (and possibly assault) them. (Id.). Plaintiff was placed on the floor while Keegan maintained control of Plaintiff's right arm, Williamson held Plaintiff's left arm, and Martin controlled Plaintiff's legs. (Id.). Russell applied leg restraints. (Id.). The PERT Team members then located and removed Plaintiff's wheelchair. (Id.). Plaintiff was allowed to return to his cell from the holding cell in the wheelchair at approximately 10:30 a.m., but was placed inside the cell without the wheelchair. (Id.). Plaintiff also refused to provide a written statement during Martin's investigation. (Id. at ¶ 21). Martin concluded that the appropriate amount of force was used to bring Plaintiff into compliance with the application of the restraints. (Id. at ¶ 22).

After both investigation reports were completed, Lanesboro management reviewed the investigations. (Id. at ¶ 23). Assistant Superintendent Ken Beaver concluded that staff

---

[1] However, as discussed infra, Plaintiff has submitted a witness statement in opposition to summary judgment that he contends that he submitted after the incident.

responded appropriately in the June 14, 2014, incident and used the appropriate amount of force. (Id. at ¶¶ 23-24). Beaver also noted that all staff were reminded that any time a circumstance arises that requires any application of force that the incident must be reported and an investigation report completed. (Id.). Administrator David Mitchell concurred with Beaver's findings and specifically noted that the force used was appropriate and limited to obtaining a correctional objective, which was the compliance and control of Plaintiff. (Id. at ¶ 25). According to Aaron, no more force than necessary was used. (Id.). Aaron also noted that the shift OIC should have been notified at the time of the incident and that staff should be more attentive to reporting such occurrences. (Id.).

Regarding Plaintiff's allegations about his wheelchair and medical needs, Aaron states that Plaintiff's claims that he was medically dependent on the wheelchair and had been assigned a wheelchair on June 17, 2014, are not true. (Id. at ¶ 26). As support, Aaron provides Plaintiff's health classification notes, which do not show a medical indication for a wheelchair in 2014. (Id.). Aaron explains that, to his knowledge, Plaintiff was taken to Central Prison for surgery on his foot in early 2014. (Id. at ¶ 27). Plaintiff returned from the Central Prison hospital in a wheelchair and had been permitted to keep the wheelchair. (Id.). However, there were no medical orders to allow him to keep the wheelchair. Rather, his possession of the wheelchair appears to have gone unnoticed. (Id.). Aaron further states that, in May and June 2014, the Anson unit was experiencing multiple inmate uprisings and disturbances related to a change of unit management. (Id. at ¶ 28). Staff had located several metal parts to wheelchairs that could have been turned into weapons. (Id.). Thus, staff removed wheelchairs from inmates not medically ordered to have them. (Id.). According to Aaron's affidavit, Plaintiff was given multiple opportunities to turn over his wheelchair for over one week but he refused to do so.

(Id.). After his refusal, it became necessary for staff to enter the cell and remove the wheelchair. (Id.). Aaron opines that based on his knowledge, training and experience, all staff actions appeared to be appropriate measures to stop Plaintiff and secure him in efforts to prevent a potential assault of staff. (Id. at ¶ 30).

According to Aaron, the use of full mechanical restraints and placing the combative inmate on the floor in order to place the restraints followed the proper measures per the use of force continuum and NCDPS policy. (Id.). Aaron states in his affidavit that the use of force by correctional staff was minimal and justified, without malicious or sadistic intent, and no more force than necessary was used by staff to bring Plaintiff into compliance with the officers' orders. (Id. at ¶ 31). Finally, Aaron states that Plaintiff was not denied access to a medically prescribed wheelchair nor did staff engage in deliberate indifference to Plaintiff's medical needs. (Id. at ¶ 34).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for

7

summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

**A. Plaintiff's Excessive Force Claim**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim,

an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

1. **Plaintiff's Excessive Force Claim against PERT Team Members Keegan, Martin, Williamson, and Russell**

The Court denies Defendants' motion for summary judgment as to Plaintiff's excessive force claim against Defendants Keegan, Martin, Williamson, and Russell. Defendants' summary judgment evidence suffers from various flaws that preclude summary judgment. That is, in support of their summary judgment motions, Defendants submit incident reports, witness statements, and only the affidavit of Defendant Aaron, who was not present when the incident occurred, in which he opines as a legal conclusion that excessive force was not used. First, an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4) (emphasis added). Aaron's statements as to what happened during the alleged excessive force incident are not admissible because Aaron simply was not present when the incident occurred. That is, Aaron's statements

as to what happened during the alleged incident are not based on his personal knowledge. Rather, he merely recites the statements of the officers who were present during the incident as to what happened. This is inadmissible hearsay. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay.") (citations omitted).

The Court further observes that, as to any legal conclusions made by Aaron in his affidavit with regard to use of force, such as his legal conclusion that Defendants Keegan, Martin, Williamson, and Russell did not use excessive force against Plaintiff, those legal conclusions are also not admissible on summary judgment. See United States v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006) (where an arrestee alleged that officers used excessive force, the testimony of the investigating officers who were not present when the incident occurred, and who testified as to the reasonableness of the officer who used the force, did not satisfy the personal knowledge requirement for the admissibility of lay opinion testimony); Parker v. Butler, No. 7:12-CV-03503-RDP, 2014 WL 3566516, at 6 n.3 (N.D. Ala. July 18, 2014) ("Whether or not one of the Defendants violated Plaintiff's right to be free from excessive force is a legal conclusion outside the purview of admissible testimony from either a lay or expert witness.").

Because the Court cannot consider Aaron's affidavit recounting the facts of the incident of alleged excessive force, this leaves only the unsworn incident reports and witness statements submitted by the other officers to support Defendants' summary judgment motion as to Plaintiff's excessive force claim. None of these individuals, however, has submitted an affidavit in support of summary judgment. See Adams v. Bouchard, 591 F. Supp. 2d 1191, 1204 (W.D. Okla. 2008) ("Critically absent from Defendants' summary judgment record is an affidavit or declaration made under penalty of perjury from either [of the two defendants alleged to have

used excessive force against the plaintiff].""). In the absence of affidavits from the officers who have personal knowledge of the alleged excessive force incident, these incident reports are not admissible because they are based on hearsay. See Bracey v. Herringa, 466 F.2d 702, 705 (7th Cir. 1972) ("We conclude that it was error for the district court to accept in support of the defendants' motion for summary judgment prison records which included the self-serving statements of the defendants themselves as well as statements of other prison guards."); see also Pommer v. Vaughn, No. 3:07cv537, 2009 WL 1490570, at *2 (D. Conn. May 27, 2009) ("[C]ourts examining incident reports in excessive force cases have found such reports to be inadmissible under Rule 803(6) because they are self-serving and lack indicia of reliability."); Mahone v. Pierce Cnty., No. C14-5665 BHS-KLS, 2015 WL 9311608, at *2 (W.D. Wash. Nov. 20, 2015), report and recommendation adopted, No. C14-5665 BHS-KLS, 2015 WL 9303485 (W.D. Wash. Dec. 22, 2015) ("The Court cannot consider the content of the incident reports because the affidavit submitted is not made on the personal knowledge of an affiant who is competent to testify to the matters stated therein. See FED. R. CIV. P. 56(e). Here, defense counsel can attest that the reports exist and that the copies presented are true and correct copies, but he is not competent to testify as to the content of the unsworn reports."); Kokoska v. City of Hartford, No. 3:12-CV-01111 WIG, 2014 WL 4724875, at *3 (D. Conn. Sept. 23, 2014) ("Recognizing the potential for self-serving statements by officers involved in excessive force incidents, courts in this circuit have generally found that their incident reports were inadmissible under Rule 803(6) because of the lack of indicia of reliability.").

The Court further notes that the Complaint itself is verified. A verified complaint "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th

11

Cir. 1991) (citing Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979) (summary judgment was improper where the inmate plaintiff alleged in a verified complaint that a prison guard watched a fellow inmate assault the plaintiff and did not intervene to stop the assault, despite conflicting affidavits from the prison guard and others)).  The allegations in Plaintiff's verified Complaint, as recited supra, are enough to raise a genuine issue of material fact as to whether Defendants Keegan, Martin, Williamson, and Russell used excessive force against Plaintiff.  See Duff v. Potter, No. 16-6783, 2016 WL 6518876, at *2 (4th Cir. Nov. 3, 2016) (reversing this Court's grant of summary judgment to the defendants on the plaintiff's excessive force claim, finding that "[Plaintiff's] version of events in his verified complaint is significantly different from the Defendants' version.  Although the Defendants submitted affidavits and support for the motion for summary judgment, the court may not consider these materials in a vacuum.  The court must view the facts and inferences drawn from the facts in [Plaintiff's] favor.").

In addition to the allegations in the verified Complaint, in opposing Defendants' summary judgment motion, Plaintiff has also submitted an affidavit, submitted under penalty of perjury, in which he states that on June 12, 2014, Defendant McLaughlin came to his cell and told him to give her his wheelchair.  Plaintiff told McLaughlin he needed the wheelchair.  On June 17, 2014, Defendants Keegan, Williamson, Martin, and Russell came to his cell between 7:00 and 8:00 a.m. and then:

> jumped on me did not give me time to come to the door and put on handcuffs or nothing.  They jumped on me kicking me, stomping me in my legs and back and punching me in the back of my head.  At any time did any one of the defendants try to intervene to prevent these kicks and blows that I was receiving.  So when they finally stopped they tried to make me walk but I feel.  Then they picked me up and put me in the wheelchair contrary to the defendants' affidavits [claiming] that they went into my cell and removed the wheelchair and no force was used.

> During the assault I received swelling and bruises to my head, back, sides, and legs. Then they took me to the holding cages on Anson Unit and assaulted me yet again a second time. Contrary to defendants' affidavits, during these events I did not resist the officers or become combative in any fashion or break any prison rules. I lay on the bed in my cell and tried to protect my face from the defendants' blows and kicks and I did the same in the hallway on Anson Unit.

(Doc. No. 60 at 6-7). Plaintiff has also submitted sworn declarations of prison inmates Chris Torterotot and Daytwaun Hair, who were also incarcerated on Anson Unit at the time of the incident. (Doc. No. 60). Torterotot states in his declaration that, on the date of the incident, "I saw the PERT TEAM approach Cell 11 and enter the cell. A few seconds later, I heard loud thuds and heard [Plaintiff] cry out. It sound[ed] like he was in pain." (Doc. No. 60 at 14). Inmate Hair states in his declaration that "[o]n June 17, 2014, I saw the Pert team snatch Ketter out the cages on Anson Unit and throw him to the ground. Because they wanted to put him in full restraints behind his back. [Plaintiff] was not resisting at no times. So once they got him to the ground they proceeded kicking and punching him in the head. And standing on his head." (Id. at 15). Plaintiff has also submitted his own witness statement, purportedly written on the day of the incident, which is consistent with the statements made in his affidavit.[2] (Id. at 12). This additional evidence submitted by Plaintiff, when considered in conjunction with the allegations made in his verified Complaint, is sufficient to raise a genuine issue of material dispute as to whether Defendants Keegan, Williamson, Martin, and Russell used excessive force against Plaintiff.

The Court recognizes that Defendants contend on summary judgment that

---

[2] Plaintiff contends that prison officials returned his witness statement to him because the print was "too small." (Id. at 2). Plaintiff contends that he rewrote the statement and submitted it again. (Id.).

Plaintiff was not injured as a result of the incident. Defendants contend that lack of injury forecloses Plaintiff's excessive force claim. Although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). In opposing summary judgment, Plaintiff states in his sworn affidavit that "during the assault I received swellings, bruises to my head, back sides, and legs." (Doc. No. 60 at 7). As noted, Plaintiff was not immediately assessed by medical staff because the incident was not reported when it happened. Instead, Plaintiff was not taken to medical for initial assessment until about three weeks after the incident. Certainly, by that time, any injuries that Plaintiff may have suffered could have healed. Furthermore, the Court notes that Defendants contend in their summary judgment memorandum that "[t]here is no indication that Plaintiff complained regarding injury or an alleged excessive use of force on the date of the incident or the days following the incident." (Doc. No. 52 at 16). However, Plaintiff has submitted as exhibits two sick calls, one dated June 20, 2014 (three days after the incident), and one dated June 27, 2014, in which he complains about "extreme pain" in his left foot and leg, and pain in his lower back. (Doc. No. 60 at 19). Plaintiff contends in his affidavit that prison staff did not respond to his sick calls. (Id. at 4). The Court finds that Plaintiff has presented enough evidence that he suffered at least minimal injuries to survive Defendants' summary judgment motion as to his excessive force claim.

In sum, considering all of this evidence presented by Plaintiff on summary judgment, and construing all inferences in the light most favorably to him, the Court finds that Plaintiff has submitted enough evidence on summary judgment to withstand the motion by Defendants

Keegan, Williamson, Martin, and Russell. The Court notes that Defendants also raise qualified immunity as a defense to Plaintiff's claim for monetary damages. In considering qualified immunity on summary judgment, the Court takes as true Plaintiff's allegations and construes them in the light most favorable to Plaintiff. See Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). "[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." Vathekan v. Prince George's Cnty., 154 F.3d 173, 180 (4th Cir. 1998). Here, according to Plaintiff's version of events, Defendants used force against Plaintiff while Plaintiff was neither resisting nor acting disruptive. The Court finds that Defendants are not entitled to qualified immunity. In conclusion, because there is a genuine issue of material fact as to whether Defendants Keegan, Martin, Williamson, and Russell used excessive force against Plaintiff, Defendants' summary judgment motion is denied.

**2. Plaintiff's Excessive Force Claim against Defendants Parker, McLaughlin, and Aaron**

To the extent that Plaintiff seeks to recover against Defendants Parker, McLaughlin, and Aaron, it is undisputed that these Defendants did not participate in the alleged excessive force incident. For a defendant to be held liable under Section 1983 in his individual capacity, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). In other words, in Section 1983 actions, supervisory officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Id. Supervisors may be held liable only under specific, limited circumstances. To establish supervisory liability under Section 1983, three elements must be established: (1) that the supervisory had actual or constructive

15

knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted).

In proving supervisory liability, a plaintiff's burden is high, as he "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). In Slakan, the Court held that this burden cannot be demonstrated by a single incident or incidents but requires supervisory inaction in the face of widespread and documented abuse." Id. Here, to the extent that Plaintiff purports to impose liability on Defendants McLaughlin, Parker, and Aaron for the alleged use of excessive force by Defendants Keegan, Martin, Williamson, and Russell, Plaintiff has failed to present any evidence to support a finding of supervisory liability. Defendants Parker, Aaron, and McLaughlin are therefore entitled to summary judgment as to Plaintiff's excessive force claim against them.

### B. Plaintiff's Claim for Deliberate Indifference to Serious Medical Needs

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded

16

a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

The Court will grant summary judgment to all Defendants as to Plaintiff's purported claim for deliberate indifference to serious medical needs based on the fact that he was required to give up the use of a wheelchair. Plaintiff has not rebutted Defendants' showing that Plaintiff was not medically prescribed a wheelchair. (Doc. No. 51 at ¶¶ 26-28). The statements from the PERT Team members indicate that they were instructed by both medical staff and unit management to retrieve Plaintiff's wheelchair. (Id., Ex. B). Moreover, prison medical records reflected no medical indication for a wheelchair in 2014. (Id., Ex. E). Plaintiff was permitted to keep a wheelchair that was sent with him from the Central Prison hospital following foot surgery. (Id. at ¶¶ 26-28). However, when the wheelchair posed a security risk, a verification was done to check the medical indications for the inmates on Plaintiff's unit and Plaintiff was found to not have a medical indication for a wheelchair. (Id.). Plaintiff was given the opportunity to voluntarily turn over the wheelchair and he refused. (Doc. No. 51, Ex. B & C). In short, there is no genuine dispute as to whether Plaintiff had a medical indication for a wheelchair, as the record evidence shows that he did not.

Further, there is no dispute that the moving Defendants are not medical providers and that they were relying on the information given to them by medical staff. Lastly, they could not have apprised anything from Plaintiff's appearance given that he was capable of walking and standing as indicated in his observation records. (Id., Ex. C). As non-medical staff members, Defendants "cannot be liable for the medical staff's diagnostic decisions." Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002). Rather, Defendants were entitled to rely on the medical judgment and expertise of the medical professionals charged with providing care to Plaintiff and the other inmates. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citation omitted). See also Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on

the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). If Plaintiff disagrees with his course of treatment or his medical need for a wheelchair, Defendants cannot be held liable for that decision. In sum, Defendants are entitled to summary judgment as to Plaintiff's claim for deliberate indifference to serious medical needs.

IV. **CONCLUSION**

For the reasons stated herein, Defendants' summary judgment motion is denied in part and granted in part.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 51), is **DENIED** in part and **GRANTED** in part. That is, Defendants' summary judgment motion as to Plaintiff's excessive force claim against Defendants Keegan, Martin, Williamson, and Russell is **DENIED**. However, the motion is **GRANTED** as to Defendants Parker, McLaughlin, and Aaron. Furthermore, Defendants' summary judgment motion as to Plaintiff's deliberate indifference claim is **GRANTED** in full and this claim is dismissed as to all Defendants.

2. Plaintiff's Motion to Appoint Counsel, (Doc. No. 59), is **GRANTED** to the extent that the Court will inquire into appointment of counsel for Plaintiff.

3. Defendants' Motion for Protective Order, (Doc. No. 56), is **DENIED** as moot.

Frank D. Whitney
Chief United States District Judge